**Philip F. POSTLEWAITE and John S. Pennell, Plaintiffs,**

v.

**MCGRAW–HILL, INC., Defendant.**

**No. 00 CIV.2041(JSR).**

United States District Court, S.D. New York.

March 30, 2001.

suit made possible by the withdrawal of plaintiff's RICO claims).

Phillip F. Postlewaite, Chicago, IL, pro se.

Richard Dannay, Cowan, Liebowitz & Latman, P.C., New York City, for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

The facts in this case are essentially undisputed. Plaintiffs Philip Postlewaite and John Pennell, the authors of a treatise on tax law, entered into a contract (the "Publishing Agreement") with defendant McGraw–Hill for the publication of their treatise by a unit of defendant named Shepard's Topical Publishing Division ("Shepard's"). Pursuant to the Publishing Agreement, defendant then entered into a contract (the "Software Agreement") with Augusta Software Design to produce a version of the treatise on CD–ROM. Subsequently, defendant sold the Shepard's unit to Thomson Legal Publishing ("Thomson"). As part of that transaction, defendant assigned the Publishing Agreement to Thomson, with the plaintiffs' consent as required by § 13 of that agreement, which provides:

> 13. ASSIGNMENTS. This Agreement may not be assigned by either the Authors [i.e. plaintiffs] or the Publisher [i.e. defendant] without the prior written consent of the other party or parties, which shall not be unreasonably withheld....

Although § 13 makes no provision for any payment resulting from the assignment of the contract, plaintiffs nonetheless claimed they were owed a royalty based on § 7(a)(3) of the Publishing Agreement:

7. ROYALTIES

> a. As full payment to the Authors, the Publisher shall pay to the Authors royalties in equal shares (except as noted in Section 7e, below) for five years following publication of the last Volume of the Work, and for so long after the fifth year as the Authors continue to provide upkeep service, as follows: ...

> (3) *Sale of Other Rights by Publisher.* 20 percent of the Publisher's gross receipts from the sale, assignment, or licensing to others by the Publisher of any rights to the Work or any part of the Work or upkeep service prepared by the Authors shall be paid to the Authors.

The dispute was taken to arbitration; the panel unanimously decided against plaintiffs, though it gave no reasons for its decision. The arbitration award was confirmed by a decision of this Court, *see Postlewaite v. McGraw–Hill, Inc.,* No. 98 Civ. 611, 1998 WL 751687 (S.D.N.Y. Oct.28, 1998).

Plaintiffs then filed the instant lawsuit, again claiming they were owed a royalty under § 7(a)(3) of the Publishing Agreement, but this time not on the basis of the assignment of the Publishing Agreement itself as previously sued for, but on the basis of the assignment of the Software Agreement, which had also been sold to Thomson as part of the Shepard's transaction and which plaintiffs claimed constituted a "right to the Work" within the meaning of § 7(a)(3). In response, defendant thereafter moved for summary judgment on the ground that plaintiffs were collaterally estopped from pursuing this claim based on the judicially confirmed arbitration award. Plaintiffs, for their part, moved for summary judgment in their favor.

New York collateral estoppel law governs defendant's motion. *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677 (2d Cir.1997). "There are now but two requirements which must be satisfied before the doctrine is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second,

the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63, 67 (1985). The party invoking collateral estoppel bears the burden of showing the first requirement, while the party opposing bears the burden on the second. *Id.*

With respect to the first requirement, while the arbitrators in the prior litigation did not provide a rationale for their holding, this Court, in confirming the arbitration award, found only one "colorable" reason for it: "the assignment of the entire [Publishing] Agreement to Thomson merely replaced McGraw–Hill with Thomson." *Postlewaite*, 1998 WL 751687, at *3 (relying on the subsequent history of the relationship between the parties, the contractual language, and industry practice to support its conclusion that Thomson substituted for McGraw–Hill). On this rationale, McGraw–Hill would not be liable for any royalty resulting from any assignment, including the assignment of the Software Agreement.

Plaintiffs offer three arguments as to why the issue of Thomson's substitution for McGraw–Hill was not necessarily decided in the prior lawsuit and thus cannot bar their instant claim. First, they maintain that the arbitrators may have decided that by consenting to the assignment of the Publishing Agreement from McGraw–Hill to Thomson, plaintiffs waived any claim to a royalty from that assignment; here, by contrast, plaintiffs, having not consented to the assignment of the Software Agreement (their consent was neither sought by McGraw–Hill nor required by the contracts), would not be precluded in their claim for a royalty. But plaintiffs offer no support for this hypothesis: nothing in plaintiffs' letter consenting to assignment of the Publishing Agreement makes any mention of royalties, much less

waiver, *see* Def.'s Ex. 3, nor did the defendant raise this argument in its brief to the arbitrators, *see* Def.'s Ex. 7. It is simply not plausible that the arbitrators independently conceived, much less relied on, this exceedingly tenuous theory to support their judgment.

Second, plaintiffs contend the arbitrators could have reached their decision based on an argument that the defendant did in fact make to them to the effect that plaintiffs would be unjustly enriched were they to prevail on their royalty claim, since they would then be due royalties (from McGraw–Hill) on the assignment of the Publishing Agreement as well as royalties (from Thomson) on the revenue from the assignment of rights to the treatise (which they did, in fact, collect, *see Postlewaite*, 1998 WL 751687, at *3). Plaintiffs here argue that, since the Software Agreement was subsequently terminated by Thomson, they are no longer able to reap any royalties from that contract (to which they would otherwise be entitled under § 7(a)(3) of the Publishing Agreement), and thus any rationale of unjust enrichment or double recovery on which the arbitrators relied is inapplicable to the instant case.

However, apart from the fact it appears unlikely that the arbitrators in fact relied on this rationale, even if one were to assume, *arguendo*, that they did, such is hardly mutually exclusive of their conclusion, separately inferred, that Thomson stood in the shoes of McGraw–Hill. Even more importantly, the rationale, if it had been adopted by the arbitrators, would, contrary to plaintiffs' argument, collaterally bar recovery in this case, for its force lies not in the fact that plaintiffs *did* double-dip on royalties, but that they *could* have done so; thus, the arbitrators' hypothesized rejection of plaintiffs' asserted entitlement to doubled royalties estab-

lishes the unreasonableness of plaintiffs' interpretation of the Publishing Agreement's royalty clause and hence bars recovery here as well.

Finally, plaintiffs argue that the arbitrators could have rested their decision on the absence of a royalty clause in § 13 (governing assignment of the entire Agreement), which, they claim, is not implicated here since this lawsuit does not concern the assignment of the Publishing Agreement but rather the Software Agreement. But this case very much concerns the assignment of the Publishing Agreement, since only that contract makes any provision for payment of royalties to the plaintiffs—indeed, plaintiffs were not even parties to the Software Agreement. Plaintiffs' claim, then, turns entirely on whether Thomson replaced McGraw–Hill with respect to the Publishing Agreement. If, as plaintiffs argue, the arbitrators concluded that the assignment of the Publishing Agreement was governed solely by § 13 (and thus entitled plaintiffs to no royalty), *a fortiori* they concluded that the entire Agreement—along with the obligation to pay any royalties for whatever reason—was assigned to Thomson.

Accordingly, the Court finds that the defendant has met its burden of showing that one or more issues dispositive of the instant case in defendant's favor were necessarily decided in the prior litigation. As for plaintiffs' claims that they did not have a full and fair opportunity to contest prior litigation before the arbitrators, their claims in this regard are either meritless on their face or transparent attempts to relitigate questions decided in the judicial confirmation of the arbitration award. Hence, they warrant no further discussion here. Plaintiffs are therefore collaterally estopped from asserting their claims in the instant complaint.

For the foregoing reasons, defendant's motion for summary judgment is hereby granted, plaintiffs' cross-motion for summary judgment is hereby denied as moot, and the complaint is hereby dismissed in its entirety. Clerk to enter judgment.

SO ORDERED.